IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEZEKIAH THOMAS,           :     CIVIL ACTION
                           :     No. 01-3096
        Plaintiff,         :
                           :
v.                         :
                           :
RICHARD CIANFRANI,         :
et al.,                    :
                           :
        Defendants.        :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    JUNE 17, 2009

        Defendants, the City of Philadelphia (the "City"),

Detective Richard Cianfrani ("Defendant Cianfrani"), Officer

Brian Schneider ("Defendant Schneider"), and Officer David Howard

("Defendant Howard," and collectively referred to as

"Defendants") file this motion for summary judgment under Fed. R.

Civ. P. 56(b).  (Doc. no. 71.)  For the reasons that follow,

summary judgment will be granted.


I. BACKGROUND[1]

    A. Facts

        On May 30, 2008, Plaintiff Hezekiah Thomas

("Plaintiff") filed his Third Amended Complaint alleging

---

[1]     Unless otherwise indicated, all facts are taken from
Plaintiff's Third Amended Complaint.  (Doc. no. 65.)

violations of his civil rights under 42 U.S.C. § 1983.[2]
According to Plaintiff, on February 12, 2001, Defendant Howard
placed a gun to Plaintiff's head and abducted his ten-month-old
son.  Plaintiff filed a complaint about this incident with the
Philadelphia Police Department.

On February 16, 2001, he was allegedly arrested without
probable cause and without a valid arrest warrant.  According to
Plaintiff, while in custody, he was deprived of necessary medical
care for his diabetes.  To substantiate the denial of his medical
care claim, Plaintiff submits a medical record of a test
conducted on February 8, 2001.  (Pl.'s Third Am. Compl. Ex. A,
doc. no. 65-2.)  A detainee's medical checklist dated February
16, 2001 from the Philadelphia Police Department is also
provided, noting the existence of his diabetes condition.  (<u>Id.</u>)
Plaintiff then alleges that he was held for nine months without a
hearing.  Lastly, Plaintiff claims he was rearrested on September
21, 2004.

According to Plaintiff, this chain of events is
evidence of a conspiracy by Defendants against Plaintiff in
retaliation for filing a complaint against Defendant Howard.
Plaintiff claims Defendant Cianfrani fabricated a story that an

---

[2]     Plaintiff's amended complaint dated May 30, 2008, named
the City as an additional defendant from his previous amended
complaint.  Defendants contend that the City was not properly
served.  Nevertheless, the City waives service and joins in the
instant motion for summary judgment.

individual named Alan Richardson ("Richardson") told him that
Plaintiff threatened Richardson with a gun and shot at him.  As
reported in an investigation interview report dated February 6,
2001, Richardson told Defendant Cianfrani that Plaintiff fired a
shot at him.  (Defs.' Mot. Summ. J. Exs. A, G, doc. nos. 71-2,
71-3.)[3]   Charges were then filed against Plaintiff in connection
with this shooting.  (<u>Id.</u> at Ex. C.)

Plaintiff provided a statement from Alan Richardson's
son.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 2, doc. no. 74.)  As
expressed in the statement, Richardson is a drug addict and is
subject to a Protection Order, which he violated.  (<u>Id.</u>)  It
further states Plaintiff did not shoot at Richardson and "the
Phila [sic] Police from the 35[th] 39th [sic] district told my
father [(Richardson)] to lie [about Plaintiff]."[4]  (<u>Id.</u>)

On February 16, 2001, Officers Paul Siwek ("Siwek") and
Michael Durkin ("Durkin") received an assignment to serve a
Protection from Abuse Order on Plaintiff.  (<u>Id.</u> at Ex. D.)  The
officers knocked on Plaintiff's door.  (<u>Id.</u>)  When Plaintiff came
to the door, the officers asked him to step outside onto his
porch in order to serve the Protection from Abuse Order and to
inform him that he must stay away from a certain complainant.

---

[3]    On December 19, 2007, Richardson reconfirmed his
statement by way of affidavit.

[4]    The statement appears to be handwritten by Plaintiff
and it is neither dated nor notarized.

(Id.)

Meanwhile, Defendant Schneider and Officer Antoine Small overheard on the police radio that Siwek and Durkin were serving a Protection from Abuse Order on Plaintiff. (Id. at Ex. E.) The officers picked Richardson up in an attempt to obtain a positive identification in order to effectuate Plaintiff's arrest for shooting at Richardson. (Id. at Ex. E.) At the scene, Richardson identified Plaintiff as the man who shot at him. (Id. at Exs. D, E.) Plaintiff was arrested following the positive identification. (Id.) Siwek and Defendant Schneider both swore under oath that neither he nor any other officer entered Plaintiff's home. (Id. at Exs. D, E.)

On June 25, 2007, Plaintiff was deposed. (Defs.' Mot. Summ. J. Ex. F, doc. no. 71-3; Pl. Dep. 20:14-25, 21:1-8, 22:23-25, 23:1-16, June 25, 2007.) Plaintiff said he was under sedation when the officers arrived on February 16, 2001, and that he has "no recollection of what happened other than the fact that [he] was removed from the residence . . . ." (Pl. Dep. 20:17, 21:2-6.) Plaintiff reiterated that he has "no recollection of [when the officers came to his home on February 16, 2001.]" (Id. at 23:7-8.) Plaintiff was then asked whether he recalls being "physically forced . . . from his sick bed in pajamas and [being arrested,]" Plaintiff replied, "no." (Id. at 23:9-16.) He was then asked, "how do you know that happened?" (Id. at 23:17.) In

-4-

response, Plaintiff said, "[w]ell, I didn't go voluntary [sic], and I was under a doctor's orders."  (Id. at 22-23.)

Plaintiff also claims that Defendant Thomas lied about arresting Plaintiff for drug possession on September 21, 2004, at 4001 Monument Road, Philadelphia, Pennsylvania at 2 p.m. Plaintiff avers that he was in Graterford Prison at that time. An arrest report from the Philadelphia Police Department dated September 22, 2004, substantiates that Plaintiff was indeed arrested for drug possession on September 21, 2004.  (Pl.'s Third Am. Compl. Ex. B, doc. no. 65-2.)


B. Procedural History

This case was initiated on October 22, 2001, against then Mayor of Philadelphia John Street ("Mayor Street"), District Attorney Lynn Abraham ("Abraham"), Police Commissioner John Timmoney ("Timmoney"), Defendant Cianfrani, Defendant Schneider, and Defendant Howard.  Since then, the case was closed then reopened, placed in suspense then removed from suspense, dismissed for lack of prosecution then reopened twice, Mayor Street, Abraham, and Timmoney have been dismissed as defendants, three amended complaints have been filed, and currently before the Court is Defendants' second motion for summary judgment. Discovery has been obtained, including Plaintiff's deposition, and it is now closed.  Plaintiff indicated that no further

-5-

discovery was necessary at a hearing held on November 14, 2008.[5]
Put succinctly, the Court has exhibited extreme forbearance
towards Plaintiff as a <u>pro se</u> litigant.


II.  LEGAL STANDARD

    A.  <u>Motion for Summary Judgment</u>

       Summary judgment is proper when "the pleadings, the
discovery and disclosure materials on file, and any affidavits,
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or
non-existence would affect the outcome of the suit under
governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).  An issue of fact is "genuine" when there is
sufficient evidence from which a reasonable jury could find in
favor of the non-moving party regarding the existence of that
fact.  <u>Id.</u> at 248-49.  "In considering the evidence, the court
should draw all reasonable inferences against the moving party."
<u>El v. Se. Pa. Transp. Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007).

       "Although the initial burden is on the summary judgment

---

     [5]    Plaintiff filed a notice of deposition on February 27,
2009, seeking to depose nine parties, including Defendants. (Doc.
no. 76.)  As previously stated, discovery is closed.  Plaintiff
had an opportunity to request additional discovery at the
discovery hearing held on November 14, 2008.  He declined when
given the opportunity so Plaintiff's request for further
discovery will be denied.

movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

     B.   Section 1983

       Section 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law.[6]  See generally Gonzaga University v. Doe, 536 U.S.

---

     [6]   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C. § 1983.

273, 284-85 (2002) (recognizing that Section 1983 provides a remedy for violations of individual rights "secured by the Constitution and laws" of the United States).  Defendants concede that they were acting under color of state law during the events giving rise to Plaintiff's complaint.  The only remaining question is whether Defendants retaliated against Plaintiff in violation of the Constitution or federal law.

III. DISCUSSION

    A.    <u>Plaintiff's Claims Against the City</u>

        1.    <u>Constitutional claims</u>

        Plaintiff premises his § 1983 claim against the City on the basis of <u>respondeat superior</u>.  While local governments are "persons" amenable to suit under § 1983, liability is limited to constitutional violations that occurred as a result of a government's policy or custom.  <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 848 (3d Cir. 2000) (citing <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 694 (1978)).  The Supreme Court has also foreclosed the ability to hold a local government liable under § 1983 solely on the basis of <u>respondeat superior</u>.  <u>Langford</u>, 235 F.3d at 847 (citing <u>Monell</u>, 436 U.S. at 691).

        Although Plaintiff alleges that the City's policies and customs caused his damage, Plaintiff fails to provide a single

-8-

piece of evidence in support of this theory.  Plaintiff's allegations are limited to the events directly relating to himself.  Under these circumstances, Plaintiff's § 1983 claim against the City are dismissed.

### 2.  State law claims

Under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541-64 (the "PSTCA"), local agencies are afforded immunity from suits for damages caused to persons or property with few exceptions.  42 Pa. C.S. § 8541-42.[7]  A plaintiff must, however, first meet three threshold requirements: (1) the damages would be recoverable under common law or statute; (2) the injury was caused by the negligent acts[8] of the local agency or an employee thereof acting within the scope of his office or duties; and (3) the act by a local agency or any of its employees falls within one of eight enumerated categories.  42 Pa. C.S. § 8542(a)-(b).

The eight enumerated categories include: (1) vehicle

---

[7]    A "local agency" is defined as "[a] government unit other than the [Pennsylvania] government.  The term includes an intermediate unit."  42 Pa. C.S. 8501.  Accordingly, the City is a local agency within the meaning of the PSTCA.

[8]    "Negligent acts" do not include crimes, actual fraud, actual malice, or willful misconduct.  42 Pa. C.S. § 8542(a)(2).  Thus, a local agency retains its governmental immunity for damages alleged as a result of crimes, actual fraud, actual malice, or willful misconduct.  Id.; Palmer v. Bartosh, 959 A.2d 508, 512 n.3 (Pa. Commw. Ct. 2008); cf. 42 Pa. C.S. § 8550.

liability; (2) care, custody, or control of personal property;
(3) real property; (4) trees, traffic controls, and street
lighting; (5) utility service facilities; (6) streets; (7)
sidewalks; and (8) care, custody, or control of animals.  42 Pa.
C.S. § 8542(b)(1)-(8).  The exceptions to immunity under the
PSTCA are to be strictly construed and interpreted.  Lory v. City
of Phila., 674 A.2d 673, 675-76 (Pa. 1996) (citing Kiley v. City
of Phila., 645 A.2d 184, 185-86 (1994); Mascaro v. Youth Study
Ctr., 523 A.2d 1118, 1123 (Pa. 1987)).

The exceptions to governmental immunity are limited,
however, to claims of negligence.  42 Pa. C.S. § 8542(a)(2); Cory
v. Stroudsburg Area Sch. Auth., 13 Pa. D. & C.4th 27, 31-32 (Pa.
Com. Pl. 1991) (dismissing strict liability claim against a local
agency because "exceptions to governmental immunity . . . only
apply to negligent acts by a local agency."); cf. Swift v. Dept.
of Transp. of the Commw. of Pa., 937 A.2d 1162, 1168 (Pa. Commw.
Ct. 2007) (recognizing "[t]he General Assembly has not waived
immunity for equitable claims seeking affirmative action by way
of injunctive relief.") (citing Bonsavage v. Borough of Warrior
Run, 676 A.2d 1330, 1331-32 (Pa. Commw. Ct. 1996)); Crockett v.
Edinboro Univ., 811 A.2d 1094, 1095-96 (Pa. Commw. Ct. 2002)
(stating in dicta that claims alleging unfair acts and deceptive
practices were barred by sovereign immunity against a
Commonwealth party); Clark v. S.E. Pa. Transp. Auth., 691 A.2d

988, 991-92 (Pa. Commw. Ct. 1997) (holding assault, battery, and excessive force claims were barred by sovereign immunity against a Commonwealth party).

Here, Plaintiff asserts claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, invasion of property,[9] negligence,[10] and constitutional violations against the City.  Since the City is protected by sovereign immunity, Plaintiff may only recover if his claims fall within the exceptions set forth in 42 Pa. C.S. § 8542.  In accordance with the mandate to strictly construe and interpret these exceptions, Pennsylvania courts have precluded claimants seeking to hold parties protected by sovereign immunity under theories other than negligence.  Accordingly, Plaintiff's false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, invasion of property, and constitutional claims are barred.

With respect to Plaintiff's negligence claim, the case

_____

[9]     Defendants suggest that Plaintiff's invasion of privacy claim is barred by the statute of limitations.  See 42 Pa. C.S. § 5523(1) (providing one year statute of limitations period for invasion of privacy claims).  According to Defendants, Plaintiff first raised this claim in his Third Amended Complaint on May 30, 2008.  For the purposes of this opinion, the Court finds Plaintiff's invasion of privacy claim "relates back" to his original pleading under Fed. R. Civ. P. 15(c)(1)(B).

[10]    Plaintiff raises two theories of negligence: (1) common law negligence; and (2) negligent hiring, retention, and supervision.

-11-

may not proceed against the City unless the negligent acts fall within an enumerated exception.  Plaintiff fails to allege a harm that occurred as a result of any of the eight exceptions under 42 Pa. C.S. § 8542(b).  Therefore, the City is immune from suit under Plaintiff's theories of recovery, and Plaintiff's state law claims against the City are dismissed.

      B.    <u>Plaintiff's Claims Against Defendants Cianfrani, Schneider, Howard, and Thomas</u>[11]

      1.   <u>Constitutional claims</u>[12]

---

[11]   Plaintiff's Third Amended Complaint dated May 30, 2008, named Defendant Thomas as an additional defendant from his previous amended complaint.  Defendants contend that Defendant Thomas was not properly served.  Defendant Thomas is an employee of a state agency, the Bureau of Narcotics Investigation.  For the purposes of this opinion, the Court shall nevertheless reach the merits of Plaintiff's case against Defendant Thomas.

[12]   Defendants assert that they are entitled to qualified immunity, excusing them from liability for Plaintiff's § 1983 action.  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).  Such immunity is appropriate where an officer's conduct is "objectively reasonable in light of the constitutional rights affected." <u>Odd v. Malone</u>, 538 F.3d 202, 217 (3d Cir. 2008); <u>see</u> <u>Carter v. City of Phila.</u>, 181 F.3d 339, 356 (3d Cir. 1999).  In other words, the ultimate inquiry is whether a hypothetical reasonable officer would have known he was violating the plaintiff's clearly established constitutional rights.  <u>Miller v. Clinton County</u>, 544 F.3d 542, 547 (3d Cir. 2008).

    The Supreme Court in <u>Saucier</u> created a mandatory two prong analysis to determine whether a § 1983 defendant is entitled to qualified immunity.  533 U.S. at 201.  Under <u>Saucier</u>, courts were directed to determine: (1) whether "'[t]aken in the light most favorable to the party asserting the injury . . . the

Plaintiff asserts the following constitutional claims against Defendants Cianfrani, Schneider, Howard, and Thomas in their official and individual capacities: (1) equal protection; (2) privileges and immunities; (3) freedom from unreasonable search and seizure; (4) false arrest; (5) false imprisonment; (6) denial of medical treatment; and (7) denial of due process.[13]

---

facts alleged show the officer's conduct violated a constitutional right[,]'" Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008) (quoting Saucier, 533 U.S. at 201); and (2) "'whether the right was clearly established.'" Id. In considering the second prong of the Saucier test, the Third Circuit clarified that "[a] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hubbard, 538 F.3d at 236 (quoting Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006)). This standard "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005)).

Recently, the framework for this analysis was slightly altered by the Supreme Court in Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. In essence, the Supreme Court no longer requires that the courts first struggle with the often difficult issue of whether there has been a violation of a constitutional right.

The Court, exercising its discretion under Pearson, will first consider whether there has been a violation of Plaintiff's constitutional rights. Under none of the theories presented by Plaintiff would a reasonable officer have known he was violating Plaintiff's constitutional rights. Defendants Cianfrani, Schneider, Howard, and Thomas are thus all entitled to qualified immunity.

[13]   A claim against a city official in his official capacity is no different than a claim against the municipality.

Each of Plaintiff's claims are discussed <u>ad seriatim</u>.[14]

        a.   <u>Fourth Amendment</u>

      Plaintiff raises claims of false arrest and false imprisonment under the Fourth Amendment prohibition against unreasonable searches and seizures.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

      The Third Circuit has made clear that "the reasonableness of [a defendant]'s arrest under the Fourth Amendment does not depend on whether it was lawful under [state or local] law." <u>United States v. Laville</u>, 480 F.3d 187, 191 (3d Cir. 2007).  The crucial inquiry is whether under the totality of

---

Kentucky v. Graham, 473 U.S. 159, 166 (1985); Whitfield v. City of Phila., 587 F. Supp. 2d 657, 665 n.13 (E.D. Pa. 2008) (J. Robreno).  Since Plaintiff is also suing the City, claims against Defendants Cianfrani, Schneider, Howard, and Thomas in their official capacity would be redundant and subject to dismissal. Whitfield, 587 F. Supp. 2d at 665 n.13.

[14]   To the extent Plaintiff's Third Amended Complaint is overly broad or ambiguous, the Court, acting out of an abundance of caution, will consider all potentially identified constitutional claims.

the circumstances probable cause existed to conduct an arrest;
the validity of an arrest under state law is merely a factor.
Id.  "Probable cause exists whenever reasonably trustworthy
information or circumstances within a police officer's knowledge
are sufficient to warrant a person of reasonable caution to
conclude that an offense has been committed by the person being
arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir.
2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Courts are
directed to consider "common sense" when conducting such an
inquiry.  Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997)
(citing Illinois v. Gates, 464 U.S. 213, 274 (1983)).

        Here, there was probable cause to arrest Plaintiff.
The evidence of record shows an investigation interview report
dated February 6, 2001, whereby Richardson told Defendant
Cianfrani that Plaintiff fired a shot at him.  Charges were filed
in connection with this incident by Richardson.  Plaintiff was
then positively identified by Richardson before being arrested on
February 16, 2001.

        Moreover, despite Plaintiff's contention, there is no
evidence Defendants entered his residence, Plaintiff even admits
that he has no recollection of the events on the date of his
arrest.  According to Siwek's and Defendant Schneider's
affidavits, Plaintiff was arrested while on his porch.

        The only evidence supporting this claim is an affidavit

by Richardson's son.  In essence, the affidavit claims Plaintiff did not shoot at Richardson and the police told Richardson to lie about Plaintiff.  Rule 56(e)(1) of the Federal Rules of Civil Procedure expressly requires that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).  The affidavit here is by Richardson's son, not Richardson himself.  This is inadmissible hearsay evidence, which runs afoul of Rule 56(e)(1).  Furthermore, the affidavit provided lacks the requisite specificity necessary to raise a genuine issue of material fact.

Under the totality of the circumstances, there is ample evidence to support a finding that probable cause existed to arrest Plaintiff.  Given that there are no genuine issues of material fact, the Court will grant the individual Defendants' motion for summary judgment as to Plaintiff's claim under the Fourth Amendment.

b.  Eighth Amendment

Plaintiff alleges denial of medical treatment, while he was a pre-trial detainee.[15]  "[T]he Eighth Amendment's Cruel and

---

[15]     There is no evidence of record to suggest Plaintiff was denied medical treatment as a post-conviction detainee.  Nor does Plaintiff's Third Amended Complaint sufficiently allege post-conviction detainee status.  Nonetheless, and in the abundance of caution, the Court also finds that Plaintiff's Eighth Amendment

Unusual Punishments Clause does not apply until 'after the sentence and conviction.'"[16] Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (Hubbard I) (quoting Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989)).  Since Plaintiff was a pre-trial detainee, the proper analysis is under the Due Process Clause because it "require[s] the responsible government or government agency to provide medical care" to pre-trial detainees.  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).[17] Otherwise, a denial of medical care would be tantamount to punishment in the absence of a conviction.  Hubbard I, 399 F.3d at 166.

The Third Circuit in Hubbard I recognized that the inquiry is governed by the United States Supreme Court decision in Bell v. Wolfish, 441 U.S. 520 (1979).  See Hubbard I, 399 F.3d at 166-67.  The overarching determination is whether the denial

---

claim is likewise denied because there are no genuine issues of material fact to support a claim of cruel and unusual punishment.

[16]    The Eighth Amendment is applicable to the states through the Fourteenth Amendment.  Robinson v. California, 370 U.S. 660, 667 (1962).

[17]    The adequacy of medical or non-medical conditions of confinement are considered under the same analysis.  See Hubbard I, 399 F.3d at 166 n.22; see also Wilson v. Seiter, 501 U.S. 294, 304 (1991); Natale v. Camden County Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987); Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (holding "at a minimum the 'deliberate indifference' standard of Estelle v. Gamble, [429 U.S. 97 (1976)] must be met.").

-17-

of medical care was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate government purpose." Wolfish, 441 U.S. at 538. The purpose of which is to avoid punishment prior to an adjudication of guilt. Hubbard I, 399 F.3d at 158 (citing Wolfish, 441 U.S. at 535).

The Third Circuit evaluates such claims under the deliberate indifference standard established in Estelle v. Gamble, 429 U.S. 97 (1976). Hubbard I, 399 F.3d at 166 n.22; Natale v. Camden County Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987); Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (holding "at a minimum the 'deliberate indifference' standard of Estelle, must be met.").

The two pronged standard of Estelle requires: (1) deliberate indifference on the part of prison officials; and (2) that the prisoner's medical needs were serious. Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004). The Supreme Court of the United States in Farmer v. Brennan adopted a subjective approach when considering whether prison officials exhibited deliberate indifference. 511 U.S. 825, 842 (1994); see also Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). Under Farmer,

> it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. We doubt that a subjective approach will present prison officials with any serious motivation "to take

-18-

> refuge in the zone between 'ignorance or obvious risks' and 'actual knowledge of risks.'"  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder [sic] may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Id. at 842 (citations omitted); see also Beers-Capitol, 256 F.3d at 125 (applying subjective deliberate indifference standard under Farmer).  A showing of "a substantial risk of serious harm" under Farmer requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; see also Beers-Capitol, 256 F.3d at 133 (finding "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.").

It is without question that pre-trial detainees are entitled to medical care.  See City of Revere, 463 U.S. at 244. The first inquiry under Estelle directs the Court to consider whether there is a genuine issue of material fact as to whether the individual Defendant's alleged denial of the plaintiff's medical needs rises to the level of deliberate indifference. Spruill, 372 F.3d at 235-36; Farmer, 511 U.S. at 842.

Here, the medical record from February 8, 2001, provided by Plaintiff merely substantiates that he has diabetes.

-19-

After his arrest on February 16, 2001, there is an indication on Plaintiff's medical checklist from the Philadelphia Police Department that he has diabetes.  Plaintiff essentially argues that he was subsequently denied medical treatment while in custody.  Besides Plaintiff's allegations, he has submitted no evidence that he was denied medical treatment for diabetes.

Under these circumstances, the Court will grant the individual Defendants' motion for summary judgment because there is no genuine issue of material fact as to whether the individual Defendants denied Plaintiff medical care under <u>Wolfish</u> and <u>Estelle</u>.

c.    <u>Fourteenth Amendment</u>

i.    <u>Equal Protection Clause</u>

Plaintiff alleges that the individual Defendants discriminated against him on the basis of his race in violation of the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no state shall make or enforce any law which shall . . . deny to any person within its jurisdiction equal protection of the laws."  The purpose of the Equal Protection Clause is to protect "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564

-20-

(2000) (citations omitted).

In order to sustain a claim under § 1983 for a denial of equal protection, a plaintiff "must prove the existence of purposeful discrimination." Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992) (citing Andrews v. Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)).  Evidence of purposeful discrimination requires a showing that the plaintiff "received different treatment from that received by other individuals similarly situated."  Id. (citing Andrews, 895 F.2d at 1478); see also Startzell v. City of Phila., Pa., 533 F.3d 183, 203 (3d Cir. 2008).

Here, Plaintiff solely relies on his pleadings and seemingly retracts from the position that his arrest occurred as the result of racial discrimination in his deposition.  First, Plaintiff relies upon references to "[t]he age old problem of racial discrimination . . . [that] remain[s] a pathology to American jurisprudence which continue[s] to tolerate de facto treatment of Afro-American citizens."  (Pl.'s Resp. to Defs.' Mot. Summ. J. 2-3, doc. no. 74.)  Second, Plaintiff stated he did not have evidence that his arrest on February 16, 2001, was the result of racial discrimination "because the officer in question was black . . . ."  (Pl. Dep. 46:7-13, June 25, 2007); (Defs.' Mot. Summ. J. Ex. F, doc. no. 71-3.)  He then went on to suggest that the basis for his racial discrimination claim was "a result

of the policy that is displayed against Afro-American[s]."  (Pl. Dep. 47:23-25.)  Since there are no facts, not to mention a genuine issue of material fact, to support Plaintiff's claim, the Court will deny Plaintiff's claim under the Equal Protection Clause.

ii.  <u>Privileges and Immunities Clause</u>

Plaintiff alleges a violation of the Privileges and Immunities Clause under the Fourteenth Amendment.  The Fourteenth Amendment, Section 1 of the United States Constitution provides "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."  In order to prove a claim under the Privileges and Immunities Clause the following elements must be present: (1) a violation of a "fundamental" right; and (2) a determination as to "whether there are 'substantial' reasons for discrimination and 'whether the degree of discrimination bears a close relation to them.'" <u>Salem Blue Collar Workers Ass'n v. City of Salem</u>, 33 F.3d 265, 268 (3d Cir. 1994) (quoting <u>Slaughter-House Cases</u>, 83 U.S. 36, 76 (1873); <u>Toomer v. Witsell</u>, 334 U.S. 385, 396 (1948)).

The Privileges and Immunities Clause only applies to uniquely federal rights.  <u>Slaughter-House</u>, 83 U.S. at 73-74; <u>Lutz v. City of York, Pa.</u>, 899 F.2d 255, 263-64 & n.20 (3d Cir. 1990) (reciting recognized rights under the Privileges and Immunities

Clause as: right to inform federal officials of violations of federal law, freedom from violence while in federal custody, right to homestead, right to vote, and right to travel) (citations omitted).  Since <u>Slaughter-House</u>, "the Privileges and Immunities Clause of the Fourteenth Amendment 'has remained essentially moribound' . . . and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights."  <u>In re Sacred Heart Hosp. of Norristown</u>, 133 F.3d 237, 244 (3d Cir. 1998) (citations omitted).

Here, there is no basis for Plaintiff's § 1983 claim based on any alleged violation of his rights under the Privileges and Immunities Clause.  Plaintiff has not satisfactorily alleged a violation of a fundamental right under the Privileges and Immunities Clause.  Accordingly, Plaintiff's claims are more appropriately considered under the Due Process Clause. Therefore, Plaintiff's claim under the Privileges and Immunities Clause is denied.

### iii. <u>Due Process Clause</u>

Plaintiff broadly alleges a violation of the Due Process Clause of the Fourteenth Amendment.  Since the protections of substantive due process are generally limited to marriage, family, procreation, the right to bodily integrity, and

-23-

education, the Court interprets Plaintiff's claim as alleging a violation procedural due process.  <u>See</u> <u>Lawrence v. Texas</u>, 539 U.S. 558, 574 (2003); <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994).  Specifically, Plaintiff alleges that he was held nine months without a hearing.  Defendants deny this claim.  Other than Plaintiff's own statement, there is no evidence of record to support Plaintiff's claim that he was held for nine months without a hearing.

Under these circumstances, the Court finds, in the absence of a genuine issue of material fact, Plaintiff's claim under the Due Process Clause is denied.

### 3.   State law claims against Defendants Cianfrani, <u>Schneider, and Howard</u>

Under the PSTCA, employees of a local agency are entitled to immunity from civil damages to the same extent as their employer local agency.  42 Pa. C.S. § 8545; <u>see also</u> <u>Palmer</u>, 959 A.2d at 512 (Pa. Commw. Ct. 2008).  As previously established, local agencies are afforded immunity from suits from damages caused to persons or property with few exceptions.  <u>See</u> 42 Pa. C.S. § 8541-42; <u>see also</u> <u>supra</u> III.A.2.

Under 42 Pa. C.S. § 8550, immunity does not apply, however, to an employee of the local agency if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or

willful misconduct . . . ." Id.; Palmer, 959 A.2d at 512.  Under
Pennsylvania law, "'willful misconduct' is synonymous with the
term 'intentional tort[.]'" Palmer, 959 A.2d at 512-13 (citing
Kuzel v. Krause, 658 A.2d 856, 859 & n.6 (Pa. Commw. Ct. 1995));
see also Bright v. Westmoreland County, 443 F.3d 276, 287 (3d
Cir. 2006) (noting Pennsylvania law equates "willful misconduct"
with "intentional tort" and that public employees are not immune
from liability for willful misconduct).  The Commonwealth Court
in Palmer defined "actual malice" as "the deliberate intent to
commit an injury as evidenced by external circumstances."  959
A.2d at 513 (citing Black's Law Dictionary 976 (8th ed. 2004)).

        Here, Plaintiff raises claims of false arrest, false
imprisonment, malicious prosecution, intentional infliction of
emotional distress, invasion of privacy, negligence, and
constitutional violations against Defendants Cianfrani,
Schneider, and Howard in their official and individual
capacities.  Since Defendants Cianfrani, Schneider, and Howard
are protected by sovereign immunity, Plaintiff may only recover
if his claims fall within the exceptions set forth in 42 Pa. C.S.
§ 8542 of if the individual Defendants' misconduct rose to the
level of "willful."  In accordance with the mandate to strictly
construe and interpret these exceptions, Pennsylvania courts have
precluded claimants seeking to hold employees of local agencies
protected by sovereign immunity under theories other than

negligence.  Accordingly, Plaintiff's false arrest, false
imprisonment, malicious prosecution, intentional infliction of
emotional distress, invasion of property, and constitutional
claims are barred absent a judicial determination "that the act
of the employee caused the injury and that such act constituted a
crime, actual fraud, actual malice or willful misconduct."  42
Pa. C.S. § 8550.

     First, Plaintiff's negligence claim may not proceed
because he fails to allege a harm that occurred as a result of
any of the eight exceptions under 42 Pa. C.S. § 8542(b).
Therefore, Defendants Cianfrani, Schneider, and Howard are immune
from suit under Plaintiff's theories of recovery.

     Second, a liberal construction of Plaintiff's complaint
may suggest claims of "actual malice" and "willful misconduct."
Besides the allegations in Plaintiff's complaint, the only
evidence supporting this claim is an affidavit by Richardson's
son.  As previously discussed, the affidavit is inadmissible
hearsay evidence and lacks the requisite specificity necessary to
raise a genuine issue of material fact.

     Third, there is no evidence that Defendants Cianfrani,
Schneider, or Howard acted outside the scope of their employment.
Based on the evidence of record, Defendants Cianfrani and
Schneider were on duty at all times.  According to Plaintiff's
Third Amended Complaint, Defendant Howard abducted Plaintiff's

ten-month-old son at gun point while off-duty.  Based on the evidence of record, Plaintiff filed a complaint with the Philadelphia Police Department on February 14, 2001, regarding the aforementioned incident.

Fourth, an investigation interview record and a complaint was submitted alleging that Plaintiff shot at Richardson.  There is also a complaint directing the police to serve a Protection from Abuse Order upon Plaintiff.  In addition, Siwek's and Defendant Schneider's affidavits both directly contradict Plaintiff's interpretation of the events leading up to and on the date of his arrest, February 16, 2001.  On the other hand, Plaintiff admits that he has no recollection of the events that allegedly occurred on February 16, 2001.

Under these circumstances, there is no genuine issue of material fact.  Accordingly, Plaintiff's state law claims against Defendants Cianfrani, Schneider, and Howard are dismissed.


C.   Plaintiff's State Law Claims Against Defendant Thomas

Plaintiff claims Defendant Thomas lied about arresting Plaintiff for drug possession on September 21, 2004.  According to Plaintiff he was in Graterford Prison at that time.  Under Pennsylvania law, Commonwealth parties are entitled to sovereign immunity.  42 Pa. C.S. § 8521; see also 1 Pa. C.S. § 2310 (providing Commonwealth parties are protected from suit by

-27-

sovereign immunity unless it is expressly waived).  A
Commonwealth party is defined as "[a] Commonwealth agency and any
employee thereof, but only with respect to an act within the
scope of his office or employment."  42 Pa. C.S. § 8501.  An
employee is defined as "[a]ny person who is acting or who has
acted on behalf of a government unit whether on a permanent or
temporary basis, whether compensated or not and whether within or
without the territorial boundaries of the government unit . . .
." Id.

      Sovereign immunity has been waived for "damages arising
out of a negligent act where the damages would be recoverable
under the common law or a statue creating a cause of action . . .
." 42 Pa. C.S. § 8522(a).  In particular, the following acts by
Commonwealth parties may result in liability: (1) operation of a
motor vehicle; (2) acts of health care employees; (3) care,
custody, or control of personal property; (4) a dangerous
condition of Commonwealth real estate, highways, and sidewalks;
(5) a dangerous condition of highways created by potholes,
sinkholes, or other similar conditions created by natural
elements; (6) care, custody, or control of animals; (7) sale of
liquor at Pennsylvania liquor stores; (8) acts of members of the
Pennsylvania military forces; and (9) use of toxoid or vaccines.
42 Pa. C.S. § 8522(b)(1)-(9).  These exceptions to immunity are
strictly construed.  Fagan v. Dept. of Transp. of the Commw., 946

A.2d 1123, 1126 (Pa. Commw. Ct. 2008) (citing Dean v. Commw.,
Dept. Of Transp., 751 A.2d 1130, 1132 (Pa. 2000)); see also
Mullin v. Commw., Dept. Of Transp., 870 A.2d 773, 779 (Pa. 2005).

Here, Plaintiff raises claims of false arrest, false
imprisonment, malicious prosecution, intentional infliction of
emotional distress, invasion of privacy, negligence, and
constitutional violations against Defendant Thomas in his
official and individual capacity.  Since Defendant Thomas is
protected by sovereign immunity, Plaintiff may only recover if
his claims fall within the exceptions set forth in 42 Pa. C.S. §
8522(b)(1)-(9).  In accordance with the mandate to strictly
construe and interpret these exceptions, Pennsylvania courts have
precluded claimants seeking to hold employees of local agencies
protected by sovereign immunity under theories other than
negligence.  Accordingly, Plaintiff's false arrest, false
imprisonment, malicious prosecution, intentional infliction of
emotional distress, invasion of property, and constitutional
claims are barred by sovereign immunity.

Moreover, Plaintiff's negligence claim may not proceed
because he fails to allege a harm that occurred as a result of
any of the exceptions under 42 Pa. C.S. § 8522(b)(1)-(9).
Therefore, Defendant Thomas is immune from suit under Plaintiff's
theories of recovery.  In the alternative, the Court finds that
Plaintiff's claim that Defendant Thomas lied about arresting

Plaintiff on September 21, 2004, is unfounded.  There is an
arrest report from the Philadelphia Police Department confirming
that Plaintiff was in fact arrested on that date.  Accordingly,
Defendant Thomas also prevails because there is no genuine issue
of material fact for trial.


IV.  CONCLUSION

          For the reasons set forth above, the motion for summary
judgment will be granted.  An appropriate order follows.